RECEIVED
U.S.D. CLERK COLUMBIA, SC

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA      2008 SEP 25    A II: 57

Anthony L. Marlar, #242361      )      C. A. No. 2:08-1874-RBH-RSC
                                )
            Petitioner,         )
                                )
         -versus-               )      **REPORT AND RECOMMENDATION**
                                )
Warden, Tyger River            )
Correctional Institution,       )
                                )
            Respondent.          )

This habeas corpus petition under 28 U.S.C. § 2254 brought
by a state prisoner proceeding *pro se* and *in forma pauperis* is
before the undersigned United States Magistrate Judge for a
report and recommendation on the respondent's motion for summary
judgment filed on August 20, 2008.  28 U.S.C. § 636(b).

### PROCEDURAL HISTORY

The petitioner, Anthony L. Marlaw, is presently confined to
the Tyger River Correctional Institution of the South Carolina
Department of Corrections pursuant to Orders of Commitment from
the Clerk of Court from Anderson County.  At the August 1996
term, the Anderson County Grand Jury indicted Petitioner for
criminal sexual conduct in the first degree ("CSC 1st") (96-GS-
04-2026) and burglary in the first degree (96-GS-04-2027).  (PCR
App. 353-54; 356-57).

Petitioner was represented at the trial level by Bruce
Byrholdt, Esquire.  On July 7 and 8, 1997, Petitioner went to
trial before the Honorable H. Dean Hall and a jury.  The jury

convicted Petitioner as charged, and Judge Hall sentenced
Petitioner to thirty (30) years for burglary and a consecutive
twelve (12) years for CSC 1st. (PCR App. 348-49; 355; 361).

A notice of appeal was filed and served with the South
Carolina Court of Appeals on July 18, 1997. Robert M. Pachak, of
the South Carolina Office of Appellate Defense, was appointed to
represent Petitioner in his direct appeal. On October 20, 1998,
Pachak filed a "no merit" Anders Petition for Writ of Certiorari
in which he raised the following issue:

> The trial court erred in allowing the victim to
> repeat what a co-defendant said because it was
> hearsay.

Petitioner filed a *pro se* brief by letter form on November 20,
1998, in which he raised a number of issues in narrative form.
On May 18, 1999, the state court of appeals issued an opinion in
which it dismissed the appeal after Anders review. State v.
Marlar, 99-UP-309 (S.C. Ct. App. 1999).

However, on May 28, 1999, Petitioner filed a *pro se* Petition
for Rehearing in which he raised the following claims:

> 1.    Was the testimony and evidencee sumitted
> (sic) to the trial court concerning DNA analysis
> flawed and contradictory?
>
> 2.    Did the prosecution fail to provide hand
> written notes from the investigation as required
> by Brady v. Maryland?
>
> 3.    Were contracdictory (sic) and inconsistent
> statements by Jerry Fields submitted to the jury
> as true and accurate?

2

>           4.    Was the appellant's attorney sufficiently
>           recovered from a recent heart attack to provide
>           representation which did not prejudice the
>           appellant's case?

On June 21, 1999, the state court of appeals issued an order in
which it granted the petition for rehearing and ordered briefing
on the following claims:

>           1.    Was it error for the trial court to deny
>           Marlar's motion for a directed verdict when the
>           DNA evidence excluded Marlar as contributor of the
>           semen?
>
>           2.    Was it error for the trial court to deny
>           Marlar's motion for a directed verdict when the
>           SLED report showed the hair samples found in the
>           victim's bed were inconsistent with Marlar's hair,
>           but this information was not made known to the
>           jury because the SLED expert testified merely that
>           no DNA tests had been performed on the hair
>           samples and did not mention that the hairs had
>           been microscopically compared to and were
>           inconsistent with Marlar's hair?

Accordingly, on July 21, 1999, Pachak filed a Brief of
Petitioner, in which he addressed the two issues requested.  The
State filed a Brief of Respondent on September 20, 1999.  On May
15, 2000, the South Carolina Court of Appeals filed an opinion in
which it affirmed the convictions and sentences. State v. Marlar,
2000-UP-1361 (S.C. Ct. App. 2000). (PCR App. 472).  The
Remittitur was sent down on June 1, 2000.

Petitioner next filed a *pro se* Application for Post-
Conviction Relief ("APCR") on August 18, 2000, (00-CP-04-2026),
in which he asserted the following issues:

>           1.    Applicant was denied Due Process of Law and

3

deprived of a fair trial, in as much as the state failed to disclose an oral statement alligedly (sic) given by applicant pursuant to applicants (sic) Brady Motion.

2.    Applicant was denied effective assistance of counsel, inasmuch as counsel failed to question the co-defendent (sic) (Jerry Fields) concerning his redacted plea agreement and past biasis (sic) which would have been reason to falsely implicate the applicant in the crime.

3.    Applicant was denied effective assistance of counsel in asmuch (sic) as counsel failed to call Detective Lindley to testify to the Statements give by Jerry Fields.

4.    Applicant was denied effective assistance of counsel Inasmuch as counsel failed to object or move to suppress the testimony of Detective Sutton, where the testimony concerning a statement given by the applicant was never read or signed by the applicant and where the original notes were lost and were not similar to what the detective testified to at trial.

5.    Applicant was denied effective assistance of counsel inasmuch as counsel failed to bring up the victims (sic) selective memory, where victim originally contended that both rapists ejaculated inside her and where DNA evidence excludes applicant from being one of the two rapists.

6.    Applicant was denied effective assistance of counsel, inasmuch as counsel failed to subpoena DNA expert John Barron or object to the states (sic) failure to subpoena Mr. Barron in an attempt to gain an unfair tactical advantage where his testimony would have established that applicants (sic) DNA did not match any of the DNA samples collected from the crime scene which would have arguable (sic) exhonerated (sic) applicant as being the second rapist.

7.    Applicant was denied effective assistance of counsel inasmuch as counsel failed to object to Solicitors (sic) mistatement (sic) of facts of in closeing (sic) arguments.

4

> 8.    Applicant was denied effective assistance of
> counsel, inasmuch as counsel failed to discuss the
> case with applicant and in failing to prepare a
> defence (sic).

(PCR App. 362).  The State filed a Return dated December 3, 2001.

(PCR App. 383).  Petitioner, through counsel Carey B. Murphy,

Esquire, filed an "Amendment to Application for Post-Conviction

Relief", dated September 23, 2002, in which he raised the

following issues:

> 1.    The Applicant was denied effective assistance
> of counsel because counsel failed to obtain and/or
> elicit appropriate information for and to make a
> motion to exclude or suppress statements allegedly
> made by the Applicant to the investigators based
> upon the failure of Michelle Brown to properly
> Mirandize the Applicant at the initial interview
> when he was a suspect in the case.
>
> All information obtained thereafter from the
> Applicant was as a result of the information
> provided by him in the initial interview and would
> therefore be excludable (sic) pursuant to the
> "fruit of the poisonous tree" doctrine of the law.
>
> 2.    The Applicant was denied effective assistance
> of counsel because counsel failed to subpoena and
> present the witnesses needed to counter testimony
> and other evidence presented by the State,
> specifically Anderson County Deputy Clark Brasier,
> the initial investitagor (sic) on the case who
> obtained statements from the victim, and SLED
> Agent John C. Barron, the trace evidence forensics
> expert who examined the pubic hairs found in the
> bed materials of the victim.  Presentation of
> evidence through these witnesses would have shown
> that the victim did not know or have reason to
> know that the Applicant was one of her rapists as
> she later testified to, and that the pubic hairs
> found at the scene was (sic) physical evidence
> that conclusively excluded the Applicant and would
> therefore show that another person reasonably
> could be the second perpetrator and would

5

>            constitute reasonale (sic) doubt as to the guilt
>            of the Applicant.
>
>            3.    The Applicant was denied effective assistance
>            of counsel because counsel failed to contact and
>            consult with SLED Agent John C. Barron concerning
>            the results of the tests performed by him on the
>            evidence submitted to him to determine how best to
>            use and present that evidence to the jury.
>            Further, counsel failed to take the necessary
>            steps to have the microscopically inconsisnt (sic)
>            pubic hairs tested for DNA evidence, either by the
>            State or by an appropriate qualified agency, to
>            obtain further evidence excluding the Applicant as
>            one of the perpetrators in this case.

(PCR App. 387).

An evidentiary hearing in Petitioner's PCR was held before

the Honorable J. C. Nicholson, Jr., on January 29, 2002. (PCR

App. 389). Petitioner was present and represented by counsel

Cary Murphy. Petitioner testified as well as SLED Agent John

Barron and trial counsel. On September 30, 2003, Judge Nicholson

issued an Order of Dismissal in which he rejected Petitioner's

allegations. (PCR App. 468).

A notice of appeal was filed with the South Carolina Supreme

Court from the denial of PCR relief. Robert M. Dudek, of the

South Carolina Office of Appellate Defense, was appointed to

represent Petitioner in his PCR appeal. On June 6, 2004, Dudek

filed a Petition for Writ of Certiorari, in which he raised the

following issues:

>            1.    Should petitioner's case be remanded for specific
>            findings of fact where the order of dismissal did not
>            specifically address any allegation of ineffective
>            assistance of counsel, including the failure to call

6

> SLED agent Barron about a crime scene hair not matching
> petitioner, and the failure to impeach codefendant
> Fields about petitioner having taken an arrest warrant
> out on him, since this order even referred to
> petitioner's trial as "involuntary plea" and these
> findings of fact were mandated by statute?
>
> 2. Was defense counsel ineffective for failing to call
> SLED Agent Barron to testify a pubic hair found on the
> alleged victim's bed was inconsistent with petitioner's
> hair, and the co-defendant's hair, since the state did
> not have any forensic evidence against petitioner, and
> this inconsistent evidence further strengthened the
> issue of a reasonable doubt?

(PCR App. 485). The State filed a Return to the Petition for

Writ of Certiorari on July 15, 2004. (PCR App. 497). The case

was subsequently transferred to the South Carolina Court of

Appeals, and on September 19, 2005, that court issued an order in

which it granted the petition for writ of certiorari. (PCR App.

506).

Accordingly, on January 23, 2006, Dudek filed a Brief of

Petitioner, in which he raised the following claims:

> 1. Should petitioner's case be remanded for
> specific findings of fact where the order of
> dismissal did not specifically address any
> allegation of ineffective assistance of counsel,
> including the failure to call SLED agent Barron
> about a crime scene hair not matching petitioner,
> and the failure to impeach codefendant Fields
> about petitioner having taken an arrest warrant
> out on him, since this order even referred to
> petitioner's trial as a "involuntary plea," and
> these findings of fact were mandated by statute?
>
> 2. Was defense counsel ineffective for failing
> to call SLED Agent Barron to testify a pubic hair
> found on the alleged victim's bed was inconsistent
> with petitioner's hair, and the co-defendant's
> hair, since the state did not have any forensic

7

> evidence against petitioner, and this inconsistent
> evidence further strengthened the issue of a
> reasonable doubt?

(PCR App. 507).  The State filed a Brief of Respondent on March

29, 2006. (PCR App. 518).  Following oral argument on September

14, 2006, the South Carolina Court of Appeals on March 26, 2007,

issued an opinion in which it vacated the denial of PCR relief

and remanded for new proceedings in the PCR court. Marlar v.

State, Op.No. 4225, 644 S.E.2d 769 (S.C. Ct. App. 2007) (PCR App.

528).  The State then filed a petition for rehearing on April 6,

2007, (PCR App. 534), which the court of appeals denied by order

dated May 17, 2007. (PCR App. 542).

The State then filed with the South Carolina Supreme Court a

Petition for Writ of Certiorari dated June 15, 2007, in which it

raised the following issues:

> 1.    The Court of Appeals erred in finding that
> the PCR court's order did not sufficiently include
> findings of fact and conlusions (sic) of law.
>
> 2.    The Court of Appeals erred in finding that
> the issue of the sufficiency of the PCR court's
> order was preserved for appellate review.
>
> 3.    The PCR court properly ruled that trial
> counsel was not ineffective for failing to call
> SLED Agent John Barron to testify about pubic
> hairs found on the victim.
>
> 4.    The PCR court properly ruled that trial
> counsel was not ineffective for failing to cross-
> examine Respondent's co-defendant Jerry Fields
> about his bias against Respondent because of a
> warrant Respondent had sworn against him.

Petitioner, through Appellate Defender Dudek, filed Return to the

8

Petition for Writ of Certiorari dated September 21, 2007, in

which he raised the following issues:

> 1.    The Court of Appeals correctly found that the
> PCR court's order did not sufficiently include the
> requisite findings of fact and conclusions of law.
>
> 2.    The Court of Appeals correctly held the
> sufficiency of the PCR court's order was preserved
> for appellate review.
>
> 3.    The Court of Appeals properly did not rule on
> the issue of whether trial counsel was ineffective
> for failing to call SLED Agent John Barron to
> testify about pubic hairs found on the victim,
> since there were not findings of fact and
> conclusions of law made by the PCR court on the
> issue.
>
> 4.    The Court of Appeals properly did not rule on
> the issue of whether trial counsel was ineffective
> for failing to cross-examine respondent's co-
> defendant Jerry Fields about his bias against
> respondent because of a warrant respondent had
> sworn against him since there were no findings of
> fact and conclusions of law on this issue.

The South Carolina Supreme Court then issued on November 5, 2007,

an opinion in which it granted the petition for writ of

certiorari, dispensed with further briefing, and reversed the

decision of the court of appeals thus reinstating the original

denial of relief by the PCR judge. State v. Marlar, Op. No.

26391, 653 S.E.2d 266 (S.C. 2007).  The Remittitur was issued on

November 21, 2007.

On December 21, 2007, Appellate Defender Dudek wrote a

letter to the state supreme court in which he noted that while he

had closed his file, he had received attached copies of *pro se*

9

motions for relief from the state supreme court's opinion
pursuant to SCRCP 60(b). On January 2, 2008, the Clerk of the
South Carolina Supreme Court replied to Dudek that no action
would be taken on the *pro se* motions as they were not filed by
counsel and in any event were not submitted until after issuance
of the Remittitur. Petitioner subsequently followed on January
17, 2008, with a *pro se* "Notice of Petition in Opposition to
Remittitur and Judgment". On February 8, 2008, the state supreme
court issued an order in which it denied the latter motion.

The following documents have been made part of the file here:

> 1.    Appendix including: Index; Trial Transcript;
> Application for Post-Conviction Relief; State's
> Return; Amended Application for Post-Conviction;
> PCR Transcript; Order of Dismissal; Clerk Records;
> SCDC Inmate Records; Petition for Writ of
> Certiorari; Return to Petition for Writ of
> Certiorari; Order Granting Certiorari; Brief of
> Petitioner; Brief of Respondent; Opinion Vacating
> and Remanding Order; Petition for Rehearing;
> Order Denying Petition for Rehearing;
>
> 2.    July 18, 1997 Amended Notice of Appeal;
>
> 3.    October 20, 1998 Final *Anders* Brief of
> Appellant;
>
> 4.    November 23, 1998 *Anders* Response Brief;
>
> 5.    May 18, 1999 South Carolina Court of Appeals
> Opinion;
>
> 6.    May 28, 1999 Petition for Rehearing;
>
> 7.    June 21, 1999 South Carolina Court of Appeals
> Order;
>
> 8.    July 21, 1999 Brief of Appellant;

10

9.    September 20, 1999 Brief of Respondent;

10.    May 15, 2000 South Carolina Court of Appeals Opinion;

11.    June 1, 2000 Remittitur;

12.    June 15, 2007 Petition for Writ of Certiorari;

13.    September 21, 2007 Return to Petition for Writ of Certiorari;

14.    November 5, 2007 South Carolina Supreme Court Opinion;

15.    November 21, 2007 Remittitur;

16.    December 20, 2007 Listing of Exhibits including *Pro Se* Motion for Rule 59(e);

17.    December 21, 2007 Letter to the Supreme Court from SCCID;

18.    January 2, 2008 Letter to Robert Dudek from South Carolina Supreme Court;

19.    January 17, 2008 *Pro Se* Notice of Petition in Opposition to Remittitur and Judgment;

20.    February 7, 2008 South Carolina Supreme Court Order.

## HABEAS ALLEGATIONS

Petitioner presented the following grounds for relief in the instant petition for a writ of habeas corpus 28 U.S.C. § 2254:

A.   Ground One:   DENIAL OF EFFECTIVE ASSISTANT OF COUNSEL.

Defense Counsel was Ineffective for failing to call available SLED Agent John Barron to testify that two public (sic) Hairs Found on the Victim's Bed "DID NOT" match Petitioner.  Similarly, counsel was ineffective for failing to cross-examine co-defendant Fields about his bias since

11

petitioner had sworn out a warrant for his arrest
for damaging his property, and Petitiner (sic)
testified at PCR this was Field's Motivation for
place him at the crime scene.

B.  Ground Two:  CONVICTION OBTAINED BY
UNCONSTITUTIONAL DNA PROCEDURES AND COURT OF
APPEALS FAILED TO MAKE A PROPER RULING...

The Court of Appeals Properly Did NOT rule on the
Issue of WHETHER TRIAL COUNSEL WAS Ineffective for
Failing to call SLED Agent John Barron to testify
about Pubic Hairs found on the Victim, since there
were NO findings of fact and Conclusions of Law
made by the PCR court on this Issue....

C.  Ground Three:  THE SUPREME COURT PROPERLY
FOUND THAT THE PCR JUDGE IN THIS MATTER FAILS TO
SPECIFICALLY ADDRESS ANY Of The Allegations Raised
By Respondent....

"PCR JUDGE FAILED TO UPHOLD THE INTEGRITY OF THE
JUDICIARY"

An Independent Judiciary is Indispensable to
Justice in Our Society.  A Judge should
participate in establishing, maintaining and
enforcing high standards of conduct, and shall
personally observe those standards so that the
Integrity and Independence of the Judiciary will
be preserved.  The Judge shall Respect and Comply
with the Law and shall act at all times in the
manner that promotes public confidence in the
Integrity and Impartiality of the Judiciary.  THE
PCR JUDGE FAILED TO DO SO, THEREFORE, CAUSING A
MISCARRIAGE OF JUSTICE IN THIS CASE.

D.  Ground Four: TRIAL COURT EXHIBITED CALOUS AND
DELIBERATE DISREGARD FOR THE PETITIONERS
FUNDAMENTAL AND FAIRNESS, DUE PROCESS RIGHTS OF
PETITIONER...

Trial Court Violated the Confrontation Clause by
preventing defense Cousel (sic) from cross-
Examining...  Trial Court violated 6th Amendment
by curtailing defense cross-examination of state's
Expert and by Impeding defense from presenting
expert of its own.  Trial Court failed to use

12

> proper DNA techniques and failed to investigate
> psychological evidence of the victims story,
> whereas claims of sexual abuse by the Petitioner
> was fabricated, or whether the perpetrator was
> someone other than the petitioner.

Petitioner Petition Pages 5-6.

On August 22, 2008, the petitioner was provided a copy of

the respondents' summary judgment motion and was given an

explanation of dismissal and summary judgment procedure as well

as pertinent extracts from Rules 12 and 56 of the Federal Rules

of Civil Procedure similar to that required by Roseboro v.

Garrison, 528 F.2d 309 (4th Cir. 1975).  The petitioner filed an

opposition to the motion on September 12, 2008.  Hence it appears

consideration of the motion is appropriate.

## APPLICABLE LAW

The Antiterrorism and Effective Death Penalty Act of 1996

("AEDPA"), effective April 24, 1996, is applicable to this action

filed in 2007.  Title 28, United States Code, Section 2254(d) and

(e) provides in pertinent part as follows:

> (d) An application for a writ of habeas corpus on
> behalf of a person in custody pursuant to the
> judgment of a State court shall not be granted
> with respect to any claim that was adjudicated on
> the merits in State court proceedings unless the
> adjudication of the claim-
>
> (1) resulted in a decision that was contrary
> to, or involved an unreasonable application of,
> clearly established Federal law, as determined by
> the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on
> an unreasonable determination of the facts in

13

> light of the evidence presented in the State court
> proceeding.
>
> (e)(1) In a proceeding instituted by an
> application for a writ of habeas corpus by a
> person in custody pursuant to the judgment of a
> State court, a determination of a factual issue
> made by a State court shall be presumed to be
> correct. The applicant shall have the burden of
> rebutting the presumption of correctness by clear
> and convincing evidence.

The Supreme Court expounded upon this language in Williams
v. Taylor, 529 U.S. 362, 120 S.Ct. 1495 (2000). Writing for the
majority with respect to this matter, Justice O'Connor
stated that a state court's decision can be contrary to the
Supreme Court's precedent in two ways: first, "if the state court
arrives at a conclusion opposite to that reached by the Court on
a question of law. Second, a state-court decision is also
contrary to the Court's precedent if the state court confronts
facts that are materially indistinguishable from a relevant
Supreme Court precedent and arrives at a result opposite to" that
of the Supreme Court. Id. at 1519.

Justice O'Connor further stated that "[t]he text of §
2254(d)(1) ... suggests that the state court's decision must be
substantially different from the relevant precedent of the
Court." Id. She added that a "state-court decision will also be
contrary to the Court's clearly established precedent if the
state court confronts a set of facts that are materially
indistinguishable from a decision of the Court and nevertheless

14

arrives at a result different from the Court precedent." Id. at
1519-20. Even if "the federal court considering the prisoner's
habeas application might reach a different result applying"
relevant Supreme Court precedent, so long as the state court
applied the correct legal rule from Supreme Court cases, such a
"run-of-the-mill" state court decision could not be deemed
"contrary to" Supreme Court precedent. Id. at 1520.

As for the "unreasonable application" prong of § 2254(d)(1),
Justice O'Connor stated that a state court decision involves an
unreasonable application of the Court's precedent if "the state
court identifies the correct governing legal rule from the
Court's cases but unreasonably applies it to the facts of the
particular state prisoner's case. Second, a state-court decision
also involves an unreasonable application of the Court's
precedent if the state court either unreasonably extends a legal
principle from our precedent to a new context where it should not
apply or unreasonably refuses to extend that principle to a new
context where it should apply." Id. Justice O'Connor added that
"[u]nder § 2254(d)(1)'s 'unreasonable application' clause, then,
a federal habeas court may not issue the writ simply because that
court concludes in its independent judgment that the relevant
state-court decision applied clearly established federal law
erroneously or incorrectly. Rather, that application must also
be unreasonable." Id. at 1522. In making the "unreasonable

15

application" inquiry, "a federal habeas court ... should ask whether the state court's application of clearly established federal law was objectively unreasonable." Id. at 1521.

In another change brought by the AEDPA, 28 U.S.C. § 2254(e)(1) now states that "a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. ... The touchstone for a reasonable determination is 'whether the determination is at least minimally consistent with the facts and circumstances of the case.'" Hennon v. Cooper, 109 F.3d 330, 335 (7th Cir.), cert. denied, 522 U.S. 819 (1997).

## THE HABEAS CORPUS EXHAUSTION REQUIREMENT

Relief under Section 2254 may be had only after a habeas petitioner has exhausted his state court remedies: "It is the rule in this country that assertions of error in criminal proceedings must first be raised in state court in order to form the basis for relief in habeas corpus. Claims not so raised are considered defaulted." Breard v. Green, 523 U.S. 371, 375, 118 S.Ct. 1352 (1998), citing Wainwright v. Sykes, 433 U.S. 72, 97 S.Ct. 2497 (1977); see also, 28 U.S.C. § 2254(b). The theory of exhaustion is based on 28 U.S.C. § 2254, which gives the federal court jurisdiction of habeas petitions. See generally, O'Sullivan v. Boerckel, 526 U.S. 838, 119 S.Ct. 1728, (1999).

16

The court's exhaustion requirements under § 2254 are explained in
Matthews v. Evatt, 105 F.3d 907, 910-911 (4th Cir.), cert.
denied, 522 U.S. 833, 118 S.Ct. 102 (1997).  In the interest of
giving state courts the first opportunity to consider alleged
constitutional errors occurring in a defendant's state trial and
sentencing, a § 2254 petitioner is required to "exhaust" all
state court remedies before a federal district court can
entertain his claims.  Thus, a federal habeas court may consider
only those issues which have been properly presented to the
highest state courts with jurisdiction to decide them.  The
burden of proving that a claim has been exhausted lies with the
petitioner.  The exhaustion requirement, though not
jurisdictional, is strictly enforced.  (Citations omitted).

    Additionally, a claim has not been exhausted unless the
substance of a petitioner's claim is "fairly presented" to the
state courts.  The Matthews court explained, "[t]he ground relied
upon must be presented face-up and squarely; the federal question
must be plainly defined.  Oblique references which hint that a
theory may be lurking in the woodwork will not suffice.  In other
words, fair presentation contemplates that both operative facts
and the controlling legal principles must be presented to the
state court."  Matthews v. Evatt, 105 F.3d at 911.

    In order to exhaust his collateral claims in state court, a
South Carolina habeas corpus petitioner must pursue a direct

17

appeal and/or file an application for relief under the South
Carolina Post Conviction Procedure Act, S.C. Code Ann. §§
17-27-10 - 160.  As the South Carolina Supreme Court has
explained: "[W]hen the claim has been presented to the Court of
Appeals or the Supreme Court, and relief has been denied, the
litigant shall be deemed to have exhausted all available state
remedies." In Re Exhaustion of State Remedies in Criminal and
Post-Conviction Relief Cases, 321 S.C. 563, 564, 471 S.E.2d 454,
454 (1990).

Petitioner here had a direct appeal which was unsuccessful.
Petitioner also had a full round of PCR proceedings.  His PCR
application was denied at the trial court level, and he had a
timely petition for a writ of certiorari from the denial of PCR.
The South Carolina Supreme Court denied the petition.  Thus, he
has exhausted his direct appeal and his PCR remedy.  Petitioner
here has no remaining state remedies which can be pursued.

## PROCEDURAL DEFAULT

When a federal habeas petitioner has failed to raise a claim
at the appropriate time in state court and has no further means
of bringing that issue before the state courts, the claim will be
considered procedurally defaulted, and he will be procedurally
barred from raising the issue in his federal habeas petition.
The United States Supreme Court has clearly stated that the
procedural default of a constitutional claim in earlier state

18

proceedings forecloses consideration by the federal courts.  See,
e.g., Smith v. Murray, 477 U.S. 527, 533, 106 S.Ct. 2661 (1986).

Procedural default can occur at any level of the state
proceedings, if a state has procedural rules which bar its courts
from considering claims not raised in a timely fashion.  The
South Carolina Supreme Court will refuse to consider claims
raised in a second appeal which could have been raised at an
earlier time.  Furthermore, if a prisoner has failed to file a
direct appeal or a PCR and the deadlines for filing have passed,
he is barred from proceeding in state court.  A petitioner must
also raise all grounds raised but denied at the PCR hearing level
in his subsequent petition to the South Carolina Supreme Court
for a writ of certiorari from the denial of PCR if he is to
preserve them for consideration here.

### THE RELATIONSHIP BETWEEN EXHAUSTION AND PROCEDURAL DEFAULT

If a petitioner in federal court has failed to raise a claim
in state court at the appropriate juncture, and is precluded by
state rules from returning to state court to raise the issue, he
has procedurally bypassed (or defaulted) his opportunity for
relief in the state courts.  Under these circumstances, the
exhaustion requirement is "technically met" and the rules of
procedural bar apply.  Matthews v. Evatt, 105 F.3d 907 (4th Cir.
1997); cert. denied, 522 U.S. 833, 118 S.Ct. 102 (1997), citing
Coleman v. Thompson, 501 U.S. 722, 735 n. 1, 111 S.Ct. 2546

19

(1991); Teague v. Lane, 489 U.S. 288, 297-98, 109 S.Ct. 1060
(1989); George v. Angelone, 100 F.3d 353, 363 (4th Cir. 1996).
In other words, where the state court has not had the opportunity
to apply its own procedural bar, the federal court will
nevertheless bar the claim where application of the bar is clear.
Teague v. Lane, 489 U.S. at 297-98.

### EXCUSING PROCEDURAL DEFAULT

Notwithstanding the foregoing, the requirement of exhaustion
is not jurisdictional, and a federal court may consider claims
which have not been presented to the highest South Carolina court
with jurisdiction to hear the claim in very limited
circumstances. Cranberry v. Greer, 481 U.S. 129, 131, 107 S.Ct.
1671 (1989). A federal court will review a procedurally
defaulted claim if the petitioner can demonstrate cause for the
default and actual prejudice therefrom, or his actual innocence
of the crimes for which he is being held. Coleman v. Thompson,
501 U.S. 722, 750, 111 S.Ct. 2546 (1991). In this context,
"cause" is defined as "some objective factor external to the
defense [that] impeded counsel's efforts to comply with the
State's procedural rule." Strickler v. Greene, 527 U.S. 263, 283
n. 24, 119 S.Ct. 1936 (1999), quoting Murray v. Carrier, 477 U.S.
478, 488 (1986). A petitioner must show reasonable diligence in
pursuing his claim to establish cause. Hoke v. Netherland, 92
F.3d 1350, 1354 n. 1 (4th Cir. 1996). Moreover, the claim of

20

cause must itself be exhausted.  Edwards v. Carpenter, 529 U.S. 446, 120 S.Ct. 1587, 146 L.Ed.2d 518 (2000) (failure of counsel to present issue on direct appeal must be exhausted in collateral proceeding as ineffective assistance to establish cause for default).

Next, with respect to establishing "actual prejudice," a petitioner generally must show some error.  Tucker v. Catoe, 221 F.3d 600, 615 (4th Cir.), cert. denied, 531 U.S. 1054, 121 S.Ct. 661 (2000).  In addition, a petitioner must show an actual and substantial disadvantage as a result of the error, not merely a possibility of harm, to show prejudice.  Satcher v. Pruett, 126 F.3d 561, 572 (4th Cir. 1997).

"Actual innocence" is not an independent claim, but only a method of excusing default.  O'Dell v. Netherland, 95 F.3d 1214, 1246 (4th Cir. 1996), aff'd, 521 U.S. 151, 117 S.Ct. 1969 (1997). To prevail under this theory, a petitioner must produce new evidence that was not available at trial to establish his factual innocence.  Royal v. Taylor, 188 F.3d 239 (4th Cir.1999).  A petitioner may establish actual innocence as to his guilt, Id., or his sentence.  Matthews v. Evatt, 105 F.3d 907, 916 (4th Cir. 1997).  It is a habeas petitioner's burden to raise cause and prejudice or actual innocence; if these are not raised by petitioner, the court need not consider the defaulted claim.

21

Kornahrens v. Evatt, 66 F.3d 1350 (4th Cir. 1995), cert. denied,
517 U.S. 1171, 116 S.Ct. 1575 (1996).

## DISCUSSION

A review of the record and relevant case law reveals that
the instant petition should be denied.  The petitioner's grounds
for relief will be reviewed seriatim.

Petitioner's first ground for relief is that his trial
lawyer was constitutionally ineffective for (1) failing to call a
SLED agent to testify that two pubic hairs found on the victim
did not match the petitioner, and (2) for failing to
cross-examine the co-defendant on an alleged bias since
Petitioner previously had sworn out a warrant against the co-
defendant for damaging property.  Petitioner's claims are not
available for review in this court because they are procedurally
barred.

To exhaust state remedies, a habeas petitioner must present
the substance of his claims to the state's highest court.  See,
e.g., Matthews v. Evatt, 105 F.3d 907, 911 (4th Cir. 1997).
Claims not presented to a state's highest court may be treated as
exhausted if it is clear that the claims would be procedurally
defaulted under state law if the petitioner attempted to raise
them now.  George v. Angelone, 100 F.3d 353, 363 (4th Cir. 1996).
However, a claim is procedurally barred from federal habeas
corpus review if the state court to which the petitioner would be

required to present the claim would now find it procedurally

defaulted.  Williams v. Taylor, 163 F.3d 860, 872 (4th Cir. 1998)

(quoting Coleman v. Thompson, 501 U.S. 722 (1991)).

Here, in its decision on the PCR appeal, the South Carolina

Supreme Court held that appellate review was precluded as

Petitioner did not file a SCRCP 59(e) motion, which rule provides

an avenue for any party to move to alter or amend a judgment,

seeking specific rulings from the PCR court on the issues he

raised.  State v. Marlar, Op. No. 26391, 653 S.E.2d 266 (S.C.

2007) (citing Pruitt v. State, 310 S.C. 254, 423 S.E.2d 127).

The South Carolina Supreme Court refused to remand Petitioner's

case to the PCR court and noted that, while in a few cases it had

remanded for specific findings, those cases were "unique" cases

in which the court was attempting to remind the bench and bar of

its procedural requirements.  The Court pointed out that the

Pruitt case specifically stated in a footnote that its action

there did not affect the general rule that issues must be

properly raised to and ruled upon by the PCR judge to be

preserved for PCR appeal.  See, also, Plyler v. State, 309 S.C.

408, 424 S.E.2d 777 (1992) (issue must be both raised to and

ruled upon by PCR judge to be preserved for appellate review).

These claims are technically exhausted because they are

procedurally barred from being raised in state court.  See, e.g.,

S.C. Code Ann. § 17-27-45 (Supp. 1998) (one-year period of

23

limitation on filing of APCR); Matthews v. Evatt, 105 F.3d 907
(4th Cir. 1997) (noting that South Carolina requires all grounds
for relief to be raised in the first APCR). Since Petitioner did
not present the instant effective assistance claims to the South
Carolina Supreme Court for review on the merits in a procedurally
viable manner, and since
the South Carolina state courts would find them procedurally
defaulted if Petitioner attempted to raise them now, then the
claims are procedurally barred in federal habeas corpus. See,
e.g., Coleman v. Thompson, 501 U.S. 722 (1991). Nor has
Petitioner demonstrated cause and prejudice or actual innocence
to relieve him of the default. He is not entitled to relief.

Petitioner's second ground for relief is as follows:
"Conviction obtained by unconstitutional DNA procedures and Court
of Appeals failed to make a proper ruling." Although the
allegation itself initially refers to "unconstitutional DNA
procedures", Petitioner appears to be contending the state court
of appeals properly remanded to the PCR court the issue of
whether counsel was ineffective for failing to call a SLED agent,
since the PCR court made no findings as to the issue. Inasmuch
as Petitioner is contending the state court of appeals was
correct as a procedural matter in remanding the case back to the
PCR court for a new hearing based on the lack of specific
findings, and the South Carolina Supreme Court was incorrect in

24

overruling that decision finding as a procedural matter the issues were not preserved, then he has raised a claim that is not cognizable in federal habeas corpus. Wright v. Angelone, 151 F.3d 151 (4th Cir. 1998); Bryant v. Maryland, 848 F.2d 492, 493 (4th Cir. 1988) (holding that errors and irregularities in connection with state post-conviction proceedings are not cognizable on federal habeas review). Petitioner is not entitled to relief on this ground.

Petitioner's third ground for relief is the same as his second ground for relief but stated in the alternative: "The Supreme Court properly found that the PCR judge in this matter fails to specifically address any of the allegations raised by respondent." Petitioner contends that the PCR judge erred by failing to rule upon all of the issues raised in his PCR, and thus Petitioner asserts the judge "failed to uphold the integrity of the judiciary."

Like his second issue, his third issue is not cognizable in habeas corpus. Wright v. Angelone, 151 F.3d 151 (4th Cir. 1998); Bryant v. Maryland, 848 F.2d 492, 493 (4th Cir. 1988) (holding that errors and irregularities in connection with state post-conviction proceedings are not cognizable on federal habeas review).

Petitioner's fourth ground for relief is as follows: "Trial court exhibited callous and deliberate disregard for the

25

petitioner's fundamental and fairness, due process rights of petitioner." Petitioner contends that the trial court violated his due process rights when the judge allegedly curtailed the defense cross-examination of the state's expert and prevented the defense from presenting its own expert. Petitioner also complained that the judge did not use "proper DNA techniques" and failed to investigate "psychological evidence of the victim's story" and third party guilt.

Again, Petitioner is attempting to raise procedurally barred issues. These claims are freestanding claims which were not raised on direct appeal, and the South Carolina state courts would find them procedurally defaulted if Petitioner attempted to raise them now. The court should not review these claims on the merits as they are procedurally barred in federal habeas corpus. See, e.g., Coleman v. Thompson, 501 U.S. 722 (1991).

<b>CONCLUSION</b>

Accordingly for the aforementioned reasons, it is recommended that the respondents' summary judgment motion be granted and this matter ended.

Respectfully Submitted,

Robert S. Carr
United States Magistrate Judge

Charleston, South Carolina
September 25, 2008

26

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.   In the absence of a timely filed objection, a district court judge need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."   Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation.   28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail.  Fed. R. Civ. P. 6(a) & (e).  Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
P.O. Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985).